# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAVID EDWARDS,

    Plaintiff,

    v.

BOROUGH OF DICKSON CITY, et al.,

    Defendants.

CIVIL ACTION NO. 3:13-cv-2108

(JUDGE CAPUTO)

## **MEMORANDUM**

Presently before the Court is the Partial Motion to Dismiss the Amended Complaint (Doc. 13) filed by Defendants William Bilinski and the Borough of Dickson City (collectively, "Defendants"). Because the Amended Complaint sufficiently sets forth a claim for violation of Plaintiff's equal protection rights under § 1983, Defendants' motion will be denied.

## **BACKGROUND**

The following facts are alleged in the Amended Complaint ("Am. Compl.," Doc. 10):

Plaintiff David Edwards has been employed by Defendant Borough of Dickson City since 1995. (Am. Compl. ¶ 7.) Plaintiff is currently forty-three (43) years of age, and at the time of the alleged events he was over the age of forty (40). *Id.* at ¶ 10. Defendant Bilinski, who was the Police Chief at all relevant times, had the power and authority to schedule all police officers, and any such scheduling decisions were official policy. *Id.* at ¶ 3. On or about April 6, 2012, Plaintiff approached Defendant Bilinski about the fact that he had not been receiving the kind of shifts that he had received in the past according to his seniority.

*Id*. at ¶ 11. In response, Defendant Bilinski told Plaintiff that he was "'not as productive as the younger guys.'" *Id*. at ¶ 12. Younger non-protected part-time police officers have received shifts that Plaintiff should have been allowed to select. *Id*. at ¶ 13. Plaintiff exhausted his administrative remedies in good faith and filed his Complaint within 90 days of the issuance of the EEOC's right-to-sue letter. *Id.* ¶ 5. Plaintiff alleges that Defendant Borough of Dickson City acquiesced in all discriminatory actions taken by Defendant Bilinski. *Id.* ¶ 21. Based on the foregoing, Plaintiff commenced this action on August 8, 2013. The Amended Complaint asserts claims for violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq.*; 42 U.S.C. § 1983 for constitutional violations of equal protection of the law, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§ 951, *et seq*. On September 12, 2013, Defendants moved to partially dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted (Doc. 13). The partial motion to dismiss is fully briefed and ripe for disposition.

## DISCUSSION

**A.     Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion, the Court's role is limited to determining whether a plaintiff is entitled to offer evidence in support of his or her claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not

consider whether a plaintiff will ultimately prevail.  *See id.*  A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim.  *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  The statement required by Rule 8(a)(2) must give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.  *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  Detailed factual allegations are not required.  *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955.  However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  Instead, a complaint must "show" this entitlement by alleging sufficient facts.  *Id.*  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).  As such, "[t]he touchstone of the pleading standard is plausability."  *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently

3

alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679, 129 S. Ct. 1937.

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id.* The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n. 13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington*

*Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

**B.    Plaintiff's §1983 Equal Protection Claim is Not Preempted by the ADEA**

Defendants' primary argument in support of their partial motion to dismiss is that Plaintiff's equal protection claim brought under § 1983 in Count 1 fails because the ADEA is his exclusive remedy for alleged age discrimination.

As Defendants note, neither the Supreme Court nor the Third Circuit Court of Appeals has addressed this issue.[1] Six of the seven Appellate Courts that have considered the issue, namely the First, Fourth, Fifth, Ninth, Tenth, and D.C. Circuit Courts of Appeal, have held that the ADEA is a plaintiff's exclusive remedy for age discrimination claims. *See, e.g., Zombro v. Baltimore City Police Department,* 868 F.2d 1364 (4th Cir.1989)*; Chennareddy v. Bowsher*, 935 F.2d 315, 318 (D.C.Cir. 1991); *Lafleur v. Tex. Dep't of Health*, 126 F.3d 758, 760 (5th Cir.1997); *Migneault v. Peck*, 158 F.3d 1131, 1140 (10th Cir.1998), *vacated on other grounds sub nom., Bd. of Regents of Univ. of N.M. v. Migneault*, 528 U.S. 1110, 120 S.Ct. 928, 145 L.Ed.2d 806 (2000); *Tapia–Tapia v. Potter*, 322 F.3d 742, 745 (1st Cir. 2003); *Ahlmeyer v. Nev. Sys. of Higher Educ.*, 555 F.3d 1051, 1057 (9th Cir. 2009).

Despite the foregoing case law, the Seventh Circuit recently decided in *Levin v.*

---

[1] In *Purtill v. Harris*, the Third Circuit did hold that the ADEA preempts judicial remedies based directly on the Constitution for claims of age discrimination in federal employment. *Purtill*, 658 F.2d 134, 136 (3d Cir. 1981). In light of *Purtill*, this Court similarly noted that the ADEA provides "exclusive relief to a federal employee alleging age or disability discrimination." *Ruddy v. U.S. Postal Service*, No. 3:09-cv-1984, 2011 WL 1043339, at *4 (M.D. Pa. Mar. 18, 2011). However, the question of whether the ADEA precludes a non-federal employee from bringing a § 1983 equal protection claim for age discrimination remains unanswered.

*Madigan* that the ADEA does not preclude a §1983 claim for a violation of constitutional rights. *Levin*, 692 F.3d 607, 615 (7th Cir. 2012) *cert. granted*, 133 S. Ct. 1600, 185 L. Ed. 2d 575 (U.S. 2013) and *cert. dismissed as improvidently granted*, 134 S. Ct. 2, 187 L. Ed. 2d 1 (U.S. 2013). Conceding that the ADEA "enacts a comprehensive statutory scheme for enforcement of its own statutory rights," the Seventh Circuit nevertheless found that "it does not preclude a § 1983 claim for constitutional rights." *Id.* at 617. The Seventh Circuit based its holding on "the ADEA's lack of legislative history or statutory language precluding constitutional claims, and the divergent rights and protections afforded by the ADEA as compared to a § 1983 equal protection claim." *Id.* The Court finds the minority position taken by the Seventh Circuit to be highly persuasive. In line with *Levin*, the Court holds that the ADEA does not preclude Plaintiff's equal protection claims brought under § 1983 for the reasons that follow.

In determining whether a "statutory enactment" precludes claims under §1983, the "'crucial consideration is what Congress intended.'" *Fitzgerald v. Barnstable School Comm.*, 555 U.S. 246, 252, 129 S. Ct. 788 (2012) (citing *Smith v. Robinson*, 468 U.S. 992, 1012, 104 S. Ct. 3457, 82 L. Ed. 2d 746 (1984)). "If Congress intended a statute's remedial scheme to 'be the exclusive avenue through which a plaintiff may assert [the] claims,' the § 1983 claims are precluded." *Id.* (internal citations omitted). In *Levin*, Judge Kanne of the Seventh Circuit aptly explains, based on Supreme Court cases that have addressed the issue, that:

> Congressional intent may be construed from the language of the statute and legislative history, *Smith,* 468 U.S. at 1009, 104 S. Ct. 3457, the statute's context, *Rancho Palos Verdes,* 544 U.S. at 127, 125 S.Ct. 1453 (Breyer, J., concurring), the nature and extent of the remedial scheme, *[Middlesex County Sewerage Auth. v. Nat'l] Sea Clammers [Ass'n],* 453

6

> U.S. [1, 20], 101 S. Ct. 2615, [69 L. Ed. 2d 435 (1981),] and a comparison of the rights and protections afforded by the statutory scheme versus a § 1983 claim, *Fitzgerald,* 555 U.S. at 252–53, 129 S.Ct. 788. A statutory scheme may preclude a § 1983 constitutional claim, *see Smith,* 468 U.S. at 1013, 104 S.Ct. 3457, especially if a § 1983 claim circumvents the statute's carefully tailored scheme and provides access to benefits unavailable under that scheme, *Fitzgerald,* 555 U.S. at 254, 129 S.Ct. 788.

*Levin*, 692 F.3d at 615 (7th Cir. 2012).

To decipher the congressional intent of the ADEA, looking first to the statutory text and legislative history, Judge Kanne notes that "[n]othing in the text of the ADEA expressly precludes a § 1983 claim or addresses constitutional rights . . . [n]or does the legislative history provide clear guidance on this issue." *Id.* at 617. While other courts have interpreted this statutory silence as an indication of congressional intent to preclude individuals from pursuing alleged violations of constitutional rights via § 1983, the Court agrees with the Seventh Circuit's interpretation of this dearth, namely that "Congress's silence on the issue tells us nothing about preclusion—we do not know whether Congress even considered alternative constitutional remedies in enacting the ADEA." *Id.* at 618.

With respect to the nature and extent of the remedial scheme as identified in *Sea Clammers*, admittedly the ADEA does contain a comprehensive remedial scheme. The statute expressly grants individual employees a private right of action and provides extensive administrative exhaustion requirements. *See* 29 U.S.C. § 626© and (d)(1). In terms of available relief, "'a district court is authorized to afford relief by means of reinstatement, backpay, injunctive relief, declaratory judgment, and attorney's fees'" and liquidated damages in the event of a willful violation. *Levin*, 692 F.3d 607, 616 (citing *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 357, 115 S.Ct. 879 (1995)).

7

Given this comprehensive scheme, it does seem clear, as the Seventh Circuit explains, that Congress intended allegations of statutory age discrimination (i.e. violations of the ADEA) to proceed exclusively under the ADEA.[2]  *Id.* at 618.

In contrast, as to claims alleging constitutional violations, "'the ADEA does not purport to provide a remedy for violation of federal constitutional rights. Nor is there any language in the ADEA indicating congressional intent to provide an exclusive federal remedy thereby foreclosing relief under § 1983 for independent constitutional violations as the result of age discrimination in employment.'" *Levin*, 692 F.3d at 618 *(*citing *Mummelthine v. City of Mason City, Iowa*, 873 F.Supp. 1293, 1325 (N.D. Iowa 1995)). Moreover, Judge Kanne notes that "Congress frequently enacts new legal remedies that are not intended to repeal their predecessors." *Levin*, 692 F.3d at 618.  Since the ADEA does not explicitly "purport to provide a remedy for violation of constitutional rights," the Court agrees with the Seventh Circuit that "without some additional indication of congressional intent, we cannot say that the ADEA's scheme alone is enough to preclude § 1983 constitutional claims." *Id.* at 619.  This conclusion is supported by the Supreme Court's statement that "[r]epeals by implication are not favored." *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 442, 107 S. Ct. 2494 (1987).

A third indicia of congressional intent set forth in *Fitzgerald* is a "comparison of the rights and protections of the statute and those existing under the Constitution." *Fitzgerald*, 555 U.S. 246, 252.  In conducting this comparison, "[w]here the contours of such rights

---

[2] In a non-precedential opinion, the Third Circuit Court of Appeals affirmed the District Court's dismissal of the plaintiff's § 1983 claim based on a violation of his rights under the ADEA.  *See Rodrock v. Moury*, 379 Fed. App'x 164, 165 (3d Cir. 2010).

8

and protections diverge in significant ways, it is not likely that Congress intended to displace § 1983 suits enforcing constitutional rights." *Id.* at 253.  In conducting this comparison, the Court again agrees with the Seventh Circuit that "the rights and protections afforded by the ADEA and § 1983 equal protection claims diverge in a few significant ways." *Levin*, 692 F.3d at 621.

First, the ADEA and equal protection claims under § 1983 diverge in terms of who a Plaintiff can sue.  Under the ADEA, a plaintiff can only sue his employer, an employment agency, or a labor organization.  *See* 29 U.S.C. § 623.  Under § 1983, however, a plaintiff has the ability to sue an individual or a governmental organization if he meets certain criteria.  As the Seventh Circuit explains, "[t]hese divergent rights between the ADEA and a § 1983 constitutional claim seriously affect a plaintiff's choice of defendants and his strategy for presenting a prima facie case." *Levin*, 692 F.3d at 621.  Second, the ADEA contains a number of unique limitations not present in the context of a § 1983 equal protection claim.  For example, the ADEA limits claims by certain individuals such as elected officials and certain staff members, law enforcement officers, and firefighters.  *See* 29 U.S.C. §§ 623(j), 630(f).  In addition, individuals under the age of forty (40) may not bring a claim under the ADEA.   *See* 29 U.S.C. § 631(a).  Third, as the Seventh Circuit explains, "as a practical matter in light of the Supreme Court's decision in *Kimel*, state employees suing under the ADEA are left without a damages remedy, as such claims are barred by Eleventh Amendment sovereign immunity." *Levin*, 692 F.3d at 621 (citing *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 91–92, 120 S.Ct. 631 (2000)).  On the other hand, in suits for damages under § 1983, municipalities do not enjoy such immunity.  *See, e.g.*

*Carver v. Foerster*, 102 F.3d 96, 102 (3d Cir. 1996) (citing *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980)).

In addition, as a matter of principle, it does not make sense that Congress would foreclose the enforcement of rights under § 1983 simply because one is over forty (40) and claims to have been discriminated against because of age. It is difficult to reconcile that such a circumstance should foreclose one's ability to enforce rights guaranteed by the Constitution.

The Court recognizes that in holding that the ADEA does not preclude Plaintiff from brining a § 1983 equal protection claim based on a violation of his constitutional rights, its opinion is at odds with the view adopted by other Judges within the Third Circuit and this district itself.[3] However, in light of the Seventh Circuit's compelling analysis in *Levin* as well as the Supreme Court's guidance regarding congressional intent in *Fitzgerald*, the Court respectfully disagrees with the authority holding that the ADEA precludes § 1983 equal protection claims for alleged age discrimination. As such, Defendants' partial

---

[3] *See, e.g. Miles v. Pennsylvania Dept. of Conservation and Natural Resources*, No. 1:08-cv-1561, 2009 WL 506371, at *6 (M.D. Pa. Feb. 27, 2009 ) ("[T]hough the Third Circuit has not ruled on whether the ADEA forecloses the possibility of § 1983 suits, the Court finds that congressional intent would be best served by requiring that the ADEA's administrative scheme be followed, and therefore that age discrimination suits be brought through the ADEA, rather than through § 1983."); *Cataldo v. Moses*, Civ.A.02–2588, 2005 WL 705359, at *15 (D.N.J. Mar. 29, 2005) ("Unlike gender discrimination, a federal claim for age discrimination cannot be pursued under the Equal Protection Clause but can only be addressed under the Age Discrimination in Employment Act (the "ADEA")."); *Barlieb v. Kutztown Univ. of Pennsylvania State Sys. of Higher Educ.,* Civ. A. 03–4126, 2003 WL 22858575, at *4 (E.D. Pa. Dec. 1, 2003) ("[W]e find that, at the very least, the ADEA preempts other judicial remedies for age discrimination in employment.").

motion to dismiss will be denied to the extent that it relies on the argument that Plaintiff's § 1983 claim is precluded by the ADEA.

**B.      Plaintiff States a § 1983 Claim**

Section 1983 allows actions for damages against individuals for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 749 n. 9, 119 S. Ct. 1624, 143 L. Ed. 2d 882 (1999) (internal quotation omitted). To prevail in an action under § 1983, a plaintiff must demonstrate: (1) a violation of a right secured by the Constitution or laws of the United States; and (2) that the alleged deprivation was committed by a person acting under color of state law. *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000); *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993).

Local governing bodies are deemed to be "persons" within the meaning of § 1983 and can be sued directly under the act for monetary, declaratory, or injunctive relief. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). To establish municipal liability, a plaintiff must: 1) demonstrate the existence of an unlawful policy or custom, and 2) prove that the municipal practice was the proximate cause of the injury. *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir.1990). Case law following *Monell* has established three mechanisms for holding a municipality liable for alleged constitutional violations:

> First, the municipality will be liable if its employee acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity, *Jett v. Dallas Independent School District*, 491 U.S.

11

> 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); second, liability will attach when the individual has policy making authority rendering his or her behavior an act of official government policy, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); third, the municipality will be liable if an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988).

*McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005). Under the second ground for municipal liability, regarding an individual with policy making authority, "[w]here [. . .] the policy in question concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)).

Here, Plaintiff asserts that Defendant Bilinski "was Police Chief and at all relevant times held the power and authority to schedule all police officers and any decision regarding the same was official policy." (Am. Compl. ¶ 3 .) Plaintiff further asserts that "Defendant Borough of Dickson City acquiesced in all discriminatory actions taken by Chief Bilinski." (Am. Compl. ¶ 3 .) Based on these assertions, under either the policymaker or ratification theory of municipal liability, Plaintiff states a § 1983 equal protection claim against Defendant Borough of Dickson City. Thus, the Court will deny Defendants' partial motion to dismiss with respect to Plaintiff's § 1983 claim.

**C. Defendants' Remaining Arguments**

Defendants argue that Count 1 should be dismissed with respect to Defendant Bilinski because the ADEA does not provide for individual liability. Since the Court finds

12

that Plaintiff has stated a valid § 1983 claim, and since such claims can proceed against individuals, Defendants' motion will be denied in this respect. Similarly, Defendants argue that Plaintiff's claim for punitive damages in Count 1 against Defendant Bilinski must be dismissed because punitive damages are not recoverable under the ADEA or the PHRA. Since Plaintiff has stated a valid § 1983 claim, this argument fails and the Court will deny Defendants' partial motion to dismiss with respect to this argument. Finally, Defendants argue that Plaintiff's claim for compensatory damages under the ADEA must be dismissed because compensatory damages are not recoverable under the ADEA. Again, since Plaintiff has stated a valid § 1983 claim, Defendants' partial motion to dismiss will be denied with respect to this argument.

## CONCLUSION

Because the ADEA does not preclude Plaintiff's § 1983 equal protection claim and since Plaintiff has stated a valid § 1983 equal protection claim, Defendants' partial motion to dismiss will be denied.

An appropriate order follows.

January 16, 2014 /s/ A. Richard Caputo
Date A. Richard Caputo
United States District Judge